This is an appeal from a Washington County Common Pleas Court judgment granting Nancy A. Arthur, plaintiff below and appellee herein, a divorce from Bobby R. Arthur, defendant below and appellant herein.
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONCERNING THE ALLOCATION OF SEPARATE PROPERTY IN THE MARITAL RESIDENCE TO WIFE AWARDING HER TWENTY (20) PERCENT OF THE PRESENT VALUE OF THE MARITAL RESIDENCE AS HER SEPARATE PROPERTY."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY FAILING TO CONSIDER THE FIFTEEN THOUSAND DOLLARS ($15,000) OF INTEREST PAID ON THE MARILYN HENDERSHOT ANNUITY FUNDS."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD APPELLANT THE EQUALIZATION PAYMENT OF ONE THOUSAND TWO HUNDRED EIGHTY-TWO DOLLARS AND FIFTY CENTS ($1,282.50)."
Our review of the record reveals the following facts pertinent to the instant appeal. On July 22, 1983, the parties married. One child was born issue of the marriage.
On June 17, 1998, appellee filed a complaint for divorce. The parties stipulated to most matters and left for the trial court's determination, inter alia, the amount of marital equity in the Kentucky Avenue residence and the distribution of the residence's equity.
On October 29, 1998, the trial court held a hearing regarding the foregoing issue. At the hearing, evidence was presented that in 1976, appellee and her former husband, Terren Lee Bichard, purchased the Kentucky Avenue residence. Bichard and appellee were divorced in 1979. The terms of appellee's 1979 divorce from Bichard permitted her to remain in the Kentucky Avenue residence and required her to pay off her former husband's interest if she remarried or cohabitated.
In 1982, appellee and appellant were cohabitating, and appellee sought to pay off Bichard's interest. In 1982, at the time of the pay off, the total equity in the Kentucky Avenue residence was $24,000. Bichard stated that his interest in the house equaled $12,000.
In June of 1982, prior to their marriage, appellant and appellee took out a second mortgage on the residence in the amount of $13,200 to pay off Bichard's interest. Both appellee and appellant signed the documents. The residence also was subject to a first mortgage in the amount of $23,000. When appellant and appellee obtained the second mortgage, the value of the home was $45,000.
At the time of the hearing, the property was subject to two mortgages: $21,068.53 and $7,135. The residence had a market value of $82,000. The trial court concluded that appellee retained separate equity in the Kentucky Avenue residence in the amount of $8,800, or twenty percent of the 1982 value of the residence. The trial court arrived at the figure by subtracting the amount of the first mortgage, $23,000, and the amount of Bichard's interest, $13,200, from the 1982 market value of the residence, $45,000.
At the hearing, appellee testified that during her marriage to appellant, the parties had not performed any major home improvements on the residence. Appellee testified that the parties had installed some new carpet and linoleum and had painted the residence, but that the parties did not invest a significant amount of money to improve the residence.
Appellee further testified that appellant failed to have money withheld for taxes. Appellee stated that she believed that appellee misappropriated $20,000 from a client and used the money to pay his gambling debts. Appellee stated that appellant received some money from the sale of his insurance book and that appellee never saw the money.
Appellant admitted that he had misappropriated $20,000 from a client and that he was required to pay back the $20,000, as well as $15,000 in interest. Appellant claimed that he deposited some of the money he received from the sale of his insurance book into his business account and that he and appellee used some of the money to support the household.
The trial court concluded that the value of the house at the time of the hearing had risen to $82,000. The trial court concluded that the increase in the value of the residence did not result from any remodeling or home improvements. Rather, the trial court found that rise in property values, generally, in the area caused the value of the parties' residence to increase. The trial court found that the liens against the residence amounted to $28,034.56. The total equity in the home amounted to $53,965. The court concluded that twenty percent of the total equity in the home, $16,400, constituted appellee's separate property. Appellant had argued that the court should take the market value of the residence, $82,000, subtract the mortgages, and divide the proceeds equally.
The court noted that during the marriage, appellant had gambled and lost considerable sums of money. The court further noted that appellant had received $20,000 to purchase an annuity on behalf of Marilyn Hendershot, and that appellant never purchased the annuity. When appellant's misconduct was discovered, he was required to pay a total of $35,000, which included the amount misappropriated plus $15,000 in interest. The court found that appellant's conduct constituted marital malfeasance and charged him with the $15,000 interest.
Thus, the court found that:
 "[B]ased upon the distribution of assets, there is a difference in value of $32,565, which, divided by 2 equals $16,282.50 each. The Court finds that the husband has committed marital malfeasance in the amount of $15,000 * * * an after subtracting that amount from the husband's share, leaves a balance of $1,282.50. In light of the financial mismanagement by the husband, his gambling debts that the parties could not afford, even after he stopped big stakes gambling, his late payment of marital debt, the nonpayment of taxes resulting in penalties and interest that would otherwise not have been due * * * the Court does not Order any equalization payment in this case."
Appellant filed a timely notice of appeal.
Appellant's three assignments of error are interrelated, each addressing the propriety of the trial court's allocation of property. Thus, we address the assignments of error together.
In his first assignment of error, appellant complains that the trial court abused its discretion by finding that twenty percent of the value of the marital residence constituted appellee's separate property. Appellant contends that appellee's separate equity in the property was, at most, .087 percent. Appellant notes that the parties, after their marriage, refinanced the residence. Appellant argues that the refinancing operated to decrease appellee's separate equity in the residence. In his second assignment of error, appellant contends that the trial court abused its discretion by failing to classify the $15,000 interest accrued as a result of appellant's misappropriation of client funds as marital property. In his third assignment of error, appellant asserts that the trial court erred by failing to award him the $1,282.50 equalization payment. We find no merit to appellant's three assignments of error.
R.C. 3105.171 sets forth the procedure a trial court must follow when allocating property in a divorce or dissolution proceeding. R.C. 3105.171(B) requires the court to determine what constitutes marital and separate property and to equitably divide the property. The statute provides:
 In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such determination, the court shall divide the marital and separate property equitably between the spouses.
The decision of whether a certain item of property constitutes marital property or separate property is a factual determination. When reviewing a trial court's characterization of property as either marital property or separate property, we must determine whether the trial court's decision is against the manifest weight of the evidence. Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96 CA 10, unreported; Thomas v. Thomas (August 4, 1997), Scioto App. No. 96 CA 2423, unreported; Wylie v. Wylie (May 30, 1996), Lawrence App. No. 95 CA 18, unreported; Wright v. Wright
(Nov. 10, 1994), Hocking App. No. 94 CA 2, unreported. In Wright, we stated:
 "* * * [T]he valuation of an asset and its classification as either marital or separate property will be upheld so long as it is founded on a sufficient quantum of proof. It is well settled that judgments supported by `some competent credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. * * *'"
After the trial court determines what constitutes marital property and what constitutes separate property, the trial court must look to R.C. 3105.171(C)(1) for guidance in dividing the property. The statute provides:
 Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors * * *.
We note that R.C. 3105.171(C)(1) expresses a preference for dividing the property "equally." A trial court may, however, exercise its discretion to divide the property in a manner it deems "equitable."
Under R.C. 3105.171(E)(3), a trial court may decide that an equal division of the property would be inequitable when one of the spouses has engaged in financial misconduct. R.C.3105.171(E)(3) provides:
 If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
An appellate court reviews a trial court's decision regarding a division of marital property under the abuse of discretion standard. See, e.g., Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028, 1030. Accordingly, absent an abuse of the discretion, an appellate court will not reverse the trial court's judgment. An "`abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *." Id. Moreover, we note that "it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case." Id. (citing Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355, 421 N.E.2d 1293, 1299). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. In reJane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citingBerk v. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301)
In the case at bar, we find competent and credible evidence to support the trial court's decision that twenty percent of the present value of the Kentucky Avenue residence constituted appellee's separate property. Moreover, we do not believe that the trial court acted arbitrarily, unreasonably, or unconscionably when dividing the property.
The trial court determined that in 1982, prior to the parties' marriage, appellee had an $8,800 interest in the Kentucky Avenue residence. The trial court arrived at the figure by subtracting the outstanding mortgages on the residence and Bichard's interest in the residence from the 1982 market value of the residence. The trial court then concluded that appellee's $8,800 interest equaled twenty percent of the 1982 value of the residence. Thus, the trial court determined that prior to the time appellant and appellee married, appellee owned twenty percent of the residence as her separate property. We believe the foregoing facts presented the trial court with competent and credible evidence to conclude that appellee's interest in the residence constituted separate property and to award appellee twenty percent of the present value of the residence as her separate property.
Furthermore, we find no abuse of the trial court's discretion with respect to the division of the marital property. We find no merit to appellant's argument that appellee should be charged with helping to account for the $15,000 interest payment due as a result of appellant's misappropriation of client funds. We find no abuse of discretion with the trial court's decision that the $15,000 interest payment resulted solely from appellant's financial misconduct.
Moreover, we do not believe that the trial court abused its discretion by refusing to order an equalization payment. The trial court specifically noted that appellant committed financial misconduct, in light of his failure to timely pay tax liabilities, his accumulation of gambling debts, and his misappropriation of client funds. The trial court concluded that appellant's actions served to further disadvantage the parties' financial situation. The trial court concluded that appellant himself caused many of the parties' financial woes and, thus, did not believe that the equalization payment would be just. The trial court thus exercised its discretion and determined that an equalization award would not be equitable. We find no error with the trial court's decision.
Accordingly, based upon the foregoing reasons, we overrule appellant's first, second, and third assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 BY: _______________________________ Peter B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.